No. 85-425

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

DAN NICHOLS,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ungar Law Office; Steven B. Ungar argued, Bozeman,
Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Judy Browning argued, Asst. Attorney General, Helena
Marc Racicot, County Prosecutor, Helena, Montana

---

Submitted: March 10, 1986

Decided: June 12, 1986

Filed: JUN 12 1986

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Defendant Nichols appeals the sentence imposed by the District Court, Fifth Judicial District, after his conviction on charges of felony kidnapping and misdemeanor assault. The District Court sentenced Nichols to:

1. Ten years at the State Prison for felony kidnapping;

2. Six months at the State Prison for misdemeanor assault;

3. Ten years at the State Prison for use of a firearm while engaged in the commission of felony kidnapping (all sentences to be served consecutively).

The District Court further designated the defendant-appellant a dangerous offender for the purpose of parole eligibility pursuant to § 46-18-404, MCA. In addition, the District Court strongly recommended, "that the Warden of the Montana State Prison, when and if he determines it to be a proper case therefor, transfer the defendant to the Swan River Forest Youth Camp to serve the sentence herein imposed."

Appellant presents a number of issues for our review:

1. Whether § 46-18-404(1)(b), MCA, which empowers a district judge to designate a convicted defendant as a dangerous offender, if he represents a "substantial danger to other persons or society," violates the Federal or Montana Constitutions because it offends due process of law by:

(a) not requiring that the defendant receive notice that the State will seek the application of dangerous offender designation, and the factual basis of the State's request for that designation, and

- 2 -

(b) by containing a standard so vague as to allow arbitrary exercise of judicial power.

2. Whether the District Court abused its discretion in imposing sentence:

(a) by designating Nichols a dangerous offender;

(b) by enhancing Nichols' sentence for kidnapping because a weapon was used in the commission of the crime, because it found the exceptions to the enhancement statute did not apply;

(c) by what Nichols claims amounts to sentencing him for the crime of deliberate homicide, despite his acquittal of that offense; and

(d) by imposing a sentence which is internally inconsistent and against the weight of substantial and credible evidence?

We affirm the District Court.

This appeal arises from an ill-conceived plan of the appellant and his father to secure a woman to augment their lives as self-professed "mountain men." On July 15, 1985 they put their plan into action. The appellant Dan Nichols and his father, Don Nichols, abducted Kari Swenson as she jogged around a lake in the mountains near Big Sky, Montana. After they tied her wrist to Dan's they proceeded deeper into the mountains. After traveling for awhile they decided to make camp. Kari, still tied wrist-to-wrist to the defendant, was taken to a tree where a chain was placed around her waist and then around the tree and fastened with a padlock. Kari testified that she had trouble moving. Later they moved Kari to another location nearby that had been prepared as a sleeping area. She was taken there with one end of the chain around her waist. When they got there they chained the other end around a tree and gave her a sleeping bag. She was

- 3 -

unable to get all the way into the sleeping bag because of the chain. She testified that she did not sleep that night.

The next morning while the father was out of the camp on an errand, Kari begged the defendant to let her go but he told her, "No, I want to keep you. You're pretty." She testified that she was crying and close to hysterics and asked him six or seven times to let her go but he refused.

The next morning Alan Goldstein, a friend of Kari's who had been looking for her, entered the camp. The appellant raised his pistol and pointed it in Goldstein's direction. Then he heard sounds behind him of Jim Schwalbe, another searcher, entering the camp. As appellant turned toward the sounds his gun discharged, seriously wounding Kari beneath her right shoulder. While Schwalbe attempted to aid Kari, Goldstein who had withdrawn from the camp, re-entered exclaiming, "You're surrounded! You might as well give up." The appellant's father said they would not give up. He moved from behind a tree, raised his rifle and from twenty feet away fatally shot Alan Goldstein. Schwalbe called Goldstein's name and ran to him. He then made his escape.

After wounding Kari, Dan Nichols did not further participate in the events until Goldstein lay dead at the scene. Then he and his father quickly prepared to break camp by packing their equipment to leave the area. Kari testified that she was getting cold but despite her pleas to keep the sleeping bag they had given her "they just kind of picked up the end and flopped" her on the ground, took the sleeping bag and left. She did not see them again until the trial.

After they had gone, Kari tried to crawl over to where Goldstein was but only made it as far as the campfire. She tried to start it by adding small sticks and blowing on it but was not successful because of difficulty breathing. She

- 4 -

began to get sore and numb. When she tried to move there was a sucking sound from the wound in her chest. She was getting very cold and tried to crawl on her hands and knees to see if she could find something to cover herself with, but was only able to crawl on her stomach a short distance at a time. She did manage to crawl over to a backpack that Jim Schwalbe had dropped. She got into a sleeping bag that she found there. Later she again tried to crawl over to where Goldstein was but could not do so because of her weakening condition. She crawled back into the sleeping bag. She forced herself to stay awake because she feared losing consciousness would lead to her death. She was finally rescued later that day.

Appellant and his father were apprehended December 13, 1985, and charged with deliberate homicide, aggravated kidnapping, assault and intimidation. Separate trials were ordered. Appellant was tried before a jury in the Fifth Judicial District, the Honorable Frank M. Davis, presiding. During the trial, much evidence was produced concerning Donald Nichols' influence over his son Dan. Both the defense and the prosecution introduced exhaustive lay and expert testimony concerning Dan's mental state and mental health.

The verdict returned by the jury on May 13, 1985 found appellant guilty of felony kidnapping and misdemeanor assault and not guilty of deliberate homicide. On May 18, 1985 the District Court released the appellant on a $35,000 property bond. The court set a sentencing hearing for July 19, 1985. Prior to the hearing the prosecuting attorney sent the defense attorney a letter dated May 24, 1985, which served as notice of the State's intentions at sentencing.

For sentencing purposes the parties agreed to avoid additional cost by stipulating to use the psychological testimony presented at trial. In addition, they filed

- 5 -

sentence recommendations, a presentence investigation report, and other documents. All this material was available to both sides.

During the sentencing the defense presented testimony by Dan Nichols. The State presented the testimony of Kari Swenson. This was followed by closing remarks and pronouncement by the court of the sentence described above.

Issue I: Due Process

A. Notice

Appellant first challenges § 46-18-404, MCA, as containing two violations of the due process guaranties of both the United States and the Montana Constitution. First, he argues the statute fails to require that the defendant receive notice prior to the sentencing hearing that the State will seek to designate the defendant as a dangerous offender under the statute.

Section 46-18-404, MCA, provides in relevant part:

(1) The sentencing court shall designate an offender a nondangerous offender for purposes of eligibility for parole under part 2 of chapter 23 if:

(a) during the 5 years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed; and

(b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the offender does not present a substantial danger to other persons in society.. . .

(3) if the court determines that an offender is not eligible to be designated as a nondangerous offender, it shall make that determination a part of the sentence imposed and shall state the determination in the judgment. Whenever the sentence and judgment does not contain such a determination, the offender is considered to have been designated as a nondangerous offender for purposes of eligibility of parole.

The practical effect of a dangerous offender designation is to deny the defendant parole eligibility until he or she has served one-half of the sentence imposed. Section 46-23-216, MCA. Cavanaugh v. Crist (Mont. 1983), 615 P.2d 890, 892, 37 St.Rep. 1461, 1463. Because of the length of the sentence imposed in this case, 20 years and 6 months, this limitation on parole eligibility also precludes appellant's transfer to Swan River Youth Camp for ten years, less "good time" credits earned.

Due process requires that a defendant's liberty interest, and risk of unjust deprivation of that liberty interest, be balanced against the State's interest in protecting the community. Greenholtz v. Nebraska Penal Inmates (1979), 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668.

It is clear that a convicted defendant's liberty interest at sentencing does not rise to the level of an accused's liberty interest at trial. Williams v. New York (1949), 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed.2d 1337. However, "it is also true the rights of the [defendant] must be protected. Due process must be observed in [sentencing] hearings . . ." State v. Harney (Mont. 1972), 499 P.2d 802, 805-806, 160 St.Rep. 55, 62.

Appellant argues that Montana's statutory structure, under which the sentencing is carried out, indicates the nature and weight of a defendant's liberty interest in parole. Section 46-18-404(1), MCA, states, "The sentencing court shall designate an offender a nondangerous offender for purposes of eligibility for parole . . . if: . . .." (Emphasis added.) The statute then goes on to list the substantive basis for a nondangerous designation and requires the court to include its determination within the judgment.

Appellant contends this mandatory language, substantive conditions, and accompanying formal procedural requirements are similar to the statutes reviewed by the United States Supreme Court in Greenholtz v. Nebraska Penal Inmates (1979), 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668, and Hewitt v. Helms (1983), 459 U.S. 460, 103 S.Ct. 864, 72 L.Ed.2d 675.

The statute in Greenholtz required that the Board of Parole shall order the release of a prisoner eligible for parole, unless one of four listed substantive provisions applied. In commenting on the nature of the liberty interest the Court noted:

> Respondents emphasize that the structure of the provision together with the use of the word "shall" binds the Board of Parole to release an inmate unless any one of the four specifically designated reasons are found. In their view, the statute creates a presumption that parole release will be granted, and that this in turn creates a legitimate expectation of release absent the requisite finding that one of the justifications for deferral exists.
>
> . . .
>
> We can accept respondents' view that the expectancy of release provided in this statute is entitled to some measure of constitutional protection. (Citations omitted.)

442 U.S. at 11-12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 667, 678.

Appellant also cites Hewitt v. Helms, wherein the Court reviewed Pennsylvania statutes to determine the nature of the liberty interest involved in avoiding more restrictive confinement than normal prison confinement:

> [W]e are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest.

Hewitt v. Helms (1983), 459 U.S. 460 at 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675, 688.

The State responds that due process requirements at the sentencing stage differ from those at trial and pretrial

- 8 -

stages. Williams v. New York (1949), 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed.2d 1337. Traditionally, courts have "very broad judicial discretion" in sentencing because sentencing is less encumbered by procedural formality. Cavanaugh v. Crist (Mont. 1983), 615 P.2d 890, 894, 37 St.Rep. 1461, 1464.

In Cavanaugh, this Court considered a similar notice challenge to § 46-18-202(2), MCA. That statute allows the sentencing court to completely restrict a defendant's parole eligibility. This Court upheld the statute, remarking,

> The restriction of parole and furlough program eligibility [contained in § 46-18-202(2)] is "a part of the sentence" by the express terms of the statute and does not involve any proceeding except the ordinary sentencing proceeding. It represents one option, among others, that the legislature has made available to district judges in the course of ordinary sentencing. The full restriction on parole and furlough eligibility permitted by section 46-18-202(2) has no existence apart from the sentence imposed for the underlying offense.

Cavanaugh, (Mont 1983), 615 P.2d at 893, 37 St.Rep. at 1463-64.

The State correctly characterizes the holding of Cavanaugh. However, that holding pertains to the procedure due, not to the nature of the interest implicated. We did not directly address the nature of the interest implicated in Cavanaugh, but we clarify that now. The language of § 46-18-202, MCA, is discretionary. Therefore it cannot be read to create any more specific liberty interest than that already inherent in a sentencing proceeding.

The language of § 46-18-404, MCA, is mandatory. This presents a different situation. It can be read to create a liberty interest, in that it limits a sentencing court's discretion by requiring the court to designate a defendant as a nondangerous offender if the substantive provisions are met. There is no constitutional right to parole. Yet, § 46-18-404, MCA, when fairly read in conjunction with §

- 9 -

46-23-216, MCA, indicates a legislatively created interest in being designated a nondangerous offender.

However, because the statute lays out the substantive criteria upon which such a designation must be based, no notice other than notice of the sentencing hearing itself is needed to comport with due process. Appellant has cited us to cases wherein courts have held that the defendant must have notice of the charge and the factual basis upon which the charge is based. However, these cases all involve proceedings apart from the sentencing hearing itself. Hewitt v. Helms (1983), 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (administrative confinement of convicted prisoner); New Jersey Parole Board v. Byrne (N.J. 1983), 460 A.2d 103 (parole hearing subsequent to incarceration). Because each of these hearings focuses on one matter, notice must be separate in each matter. A sentencing hearing, unlike those discrete proceedings, requires that many determinations be made. The statutes governing sentencing provide ample notice of matters which may come up. These, along with notice of the date of hearing, the full disclosure of presentencing information in open court; the ability of the defendant to propound evidence, to confront witnesses, and to participate in the sentencing proceeding provide a full panoply of due process safeguards for the liberty interest implicated. See, State v. Redding (Mont. 1984), 675 P.2d 974, 41 St.Rep. 147; Cavanaugh v. Crist (1983), 615 P.2d at 893, 37 St.Rep. at 1463.

B.  Vagueness.

In order to apply the dangerous offender designation the District Court must find that the defendant poses a "substantial danger to other persons or society," § 46-18-404(1)(b), MCA.  Appellant notes that the term

- 10 -

"substantial danger" is not defined in Title 46, or anywhere in the criminal code. Appellant contends that "substantial danger is a term of [so] loose and uncertain meaning," Wilding v. Norton (Cal. 1958), 319 P.2d 440, that a court's discretion in defining the term is unfettered. Statutes which allow arbitrary or discriminatory application of the law offend due process.

Appellant argues that state courts have split over the definition of "dangerous," and therefore provide no persuasive authority for a district court to adopt. Furthermore, because § 46-18-404, MCA, is void of legislative history, the District Court can find no guidance there. In response the State cites a multitude of cases upholding similar statutes despite vagueness challenges.

We note that arguments similar to those made by the appellant were rejected by the Third Circuit Court of Appeals in construing the term "dangerous" in 18 U.S.C. 3575(f), the federal dangerous offender statute. United States v. Davis (3rd Cir. 1983), 710 F.2d 104. Indeed many other Courts of Appeals have upheld this statute. See United States v. Stewart (6th Cir. 1975), 531 F.2d 326, 336-37, cert. denied, 426 U.S. 922 (1976); United States v. Bowdach (5th Cir. 1977), 561 F.2d 1160, 1175; United States v. Neary (7th Cir. 1977), 552 F.2d 1184, 1194, cert. denied, 424 U.S. 864 (1977); United States v. Warme (2d Cir. 1978), 572 F.2d 57, 62, cert. denied, 435 U.S. 1011, 439 U.S. 981 (1978); United States v. Cox (8th Cir. 1983), 719 F.2d 285, cert. denied, 104 S.Ct. 1714 (1984).

We hold that § 46-18-404(1)(b), MCA, is sufficiently clear to guide the district courts in designating dangerous offenders and does not violate defendant's right to due process.

- 11 -

Issue II: Discretion of the District Court

A. Dangerous Offender Designation.

The appellant contends the District Court abused its discretion in designating him a dangerous offender. In support of this contention, appellant notes that the District Court released Nichols on bail after conviction and prior to sentencing. This, argues appellant, was an implicit finding that he was not dangerous to society. Cf. French v. Crist (Mont. 1974), 518 P.2d 35. This Court has held that after placing a defendant on probation and suspending the defendant's sentence, a district court could not then later designate the defendant as a dangerous offender when his probation was revoked. Smith v. State (1980), 187 Mont. 225, 226-227, 606 P.2d 153 at 155. Furthermore, appellant notes that there was no evidence in the record indicating he posed a future threat. Next appellant argues that the court's finding of fact no. 10 explicitly reveals the court relied on matters precluded from consideration by § 46-18-404(2)(a), MCA: that is, past juvenile convictions. That finding includes determinations that the defendant had committed burgary and was a drug abuser. Appellant strongly argues that there is no evidence in the record to support those determinations.

Lastly, the appellant contends that the district judge impermissibly designated him a dangerous offender because the judge did not like appellant's demeanor. Matter of McFadden (Mont. 1980), 605 P.2d 599. The findings of fact and conclusions of law which were filed in August, appear to the appellant as a post hoc rationale for the dangerous offender designation and do not comply with the requirement that the court articulate the reasons for the designation at the time

- 12 -

of judgment.  State v. Stumpf (Mont. 1980), 609 P.2d 298, 299, 187 St.Rep. 225.

This Court notes that the factual basis of finding no. 10 is in the record.  The Court may consider persistence in criminal conduct and failure of earlier discipline to deter or reform the defendant.  State v. Maldonado (1978), 176 Mont. 322, 330, 578 P.2d 296, 301.  The holding in Smith v. State (Mont. 1980), 606 P.2d 153, does not apply because in that case the defendant had previously been sentenced without being designated as dangerous.  Furthermore, § 46-18-404(a), MCA, does not prohibit evidence of juvenile offense, except where the defendant was less than 18 at the time the currently charged offense was committed.  Nichols was 19 at the time of the kidnapping.  Finally, there is no inconsistency between releasing the defendant on bail after conviction and later designating him as a dangerous offender.  The judge properly considered matters arising between conviction and sentencing in determining the designation.  Therefore we hold the District Court did not abuse its discretion in designating the appellant as a dangerous offender.

B.  Enhancement.

Appellant argues that the statutory exceptions to the statute which allows the sentencing court to enhance a defendant's sentence when the offense was committed with a dangerous weapon, apply in this case.  The statutes in question provide, in relevant part:

> Section 46-18-221, MCA.  Additional sentence for offenses committed with a dangerous weapon.  (1) A person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a firearm,. . . shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than

- 13 -

two years or more than ten years, except as provided in 46-18-222. (Emphasis added.)

Section 46-18-222, MCA. Mandatory minimum sentences and restrictions on deferred imposition and suspended execution of sentence. All mandatory minimum sentences prescribed by the laws of this state and the restrictions on deferred imposition and suspended execution of sentence . . . do not apply if:

. . .

(2) the defendant's mental capacity, at the time of the commission of the offense for which he is to be sentenced, was significantly impaired, although not so impaired as to constitute a defense to the prosecution;

(3) the defendant, at the time of the commission of the offense for which he is to be sentenced, was acting under unusual and substantial duress, though not such duress as would constitute a defense to the prosecution.

Appellant contends he meets both of the exceptions laid out in § 46-18-222(1) and (2), MCA. He argues that the evidence introduced at trial, and stipulated for use at sentencing, conclusively proves that his mental capacity was significantly impaired and that he was acting under unusual and substantial stress. Appellant cites statements by all three mental health experts for support.

However, we find we do not need to reach the question of the sufficiency of the evidence. Section 46-18-222, MCA, does not apply in this case. Judge Davis did not pronounce a minimum sentence. Section 46-18-222, MCA, does not apply in cases where the maximum sentence is imposed. A careful reading of the statute and this Court's holding in State v. Stroud (Mont. 1984), 683 P.2d 459, 469, 41 St.Rep. 919, 931, indicates that the purpose of the statute is to allow a judge who would otherwise have to pronounce the minimum sentence, to sentence a defendant to less than the minimum sentence when the exceptions apply to the facts.

- 14 -

## C. Sentencing for Homicide.

Comments made by the sentencing judge, as well as the fact that the absolute maximum sentence in every respect was imposed, causes the appellant to argue that the judge abused his discretion. Despite the jury's verdict of not guilty of homicide, the judge stated, "The defendant in my judgment is morally if not equally legally responsible for the death of Al Goldstein and I can't sentence him for that." Appellant contends this comment indicated the judge's complete disagreement with the jury verdict. The appellant argues that the jury's role as fact finder is the cornerstone of the American justice system and cannot be disregarded. Appellant cites a similar case, Commonwealth v. Sypin (Pa. Super. 1985), 491 A.2d 1371 where the sentencing court below had remarked "And [disappeared children's] problems result from men like you." The Appeals Court vacated the sentence and remanded because "Appellant was not charged in connection with the disappearance or death of any child." Sypin, 491 A.2d at 1372.

The State responds, and we agree, that the District Judge acknowledged "and I can't sentence him for that." It is therefore obvious from the record that the judge did not base the sentence on the homicide charge. State v. Olsen (Mont. 1980), 614 P.2d 1061, 1064. We hold there was no abuse of discretion in this regard.

## D. Consistency with the Evidence.

Appellant contends that the dangerous offender designation effectively puts appellant's parole eligibility beyond the time which would allow him to serve his sentence at Swan River. Appellant contends all the mental health experts recommended Swan River so he could continue his

rehabilitation through counseling. This, insists the appellant, ignores the rehabilitative policy of this State.

We can find no inconsistency. Clearly the District Court recognized the appellant's need for counseling, but considered that the other factors required the sentence given. The District Court left the determination of when the appellant should be transferred to Swan River in the hands of the Warden of the State Prison. This does not ignore the rehabilitative policy of this State.

The sentence of the District Court is affirmed in all respects.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 16 -