No. 03-561

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 5

STATE OF MONTANA,

        Petitioner and Respondent,

   v.

CHARLES WEBB,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDC 2002-371(c)
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Vincent van der Hagen, Cascade County Public Defender Office, Great Falls, Montana

      For Respondent:

           Honorable Mike McGrath, Montana Attorney General, Robert Stutz, Assistant Attorney General, Helena, Montana; Brant S. Light, Cascade County Attorney, Joel Thompson, Deputy County Attorney

Submitted on Briefs:  January 6, 2004

Decided:  January 25, 2005

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Charles Webb (Webb) was convicted in the Eighth Judicial District Court, Cascade County, of Sexual Intercourse Without Consent, Second Offense, in violation of § 45-5-503, MCA, a felony. Webb was sentenced to life in prison without the possibility of parole pursuant to § 46-18-219, MCA. He appeals his sentence. We affirm the District Court.

¶2     There are four issues raised in this appeal:

¶3     1. Whether the exception to the mandatory minimum sentence provided in § 46-18-222(3), MCA, was applicable to Webb's case.

¶4     2. Whether the mandatory minimum sentence set forth in § 46-18-219, MCA, violates Webb's procedural and substantive due process rights under the United States and Montana Constitutions.

¶5     3. Whether the mandatory minimum sentence set forth in § 46-18-219, MCA, violates the prohibition against cruel and unusual punishment under Article II, Section 22, of the Montana Constitution both on its face and as applied.

¶6     4. Whether the mandatory minimum sentence set forth in § 46-18-219, MCA, violates Article II, Section 28(1), of the Montana Constitution.

## BACKGROUND

¶7     On September 12, 2002, the State filed an Information charging Webb with Sexual Intercourse Without Consent pursuant to § 45-5-503, MCA, a felony, for raping a handicapped neighbor in Great Falls after attempting to kill her by breaking her neck. Webb later turned himself over to police custody, admitted to the crime, entered into a plea

2

agreement and subsequently pled guilty. Webb had a prior conviction of sexual intercourse without consent, so his sentence was given pursuant to § 46-18-219, MCA, which provides that a person convicted of a second violation of § 45-5-503, MCA, must be sentenced to life in prison without the possibility of parole. Webb appeals from this sentence.

## STANDARD OF REVIEW

¶8 Trial judges are granted broad discretion to determine the appropriate punishment for offenses. *State v. Hembd* (1992), 254 Mont. 407, 411, 838 P.2d 412, 415. On appeal we will not review a sentence for mere inequity or disparity. *Hembd*, 254 Mont. at 411, 838 P.2d at 415. Rather, this Court will only review a criminal sentence for its legality; that is, whether the sentence is within statutory parameters. *State v. Heath*, 2004 MT 58, ¶ 8, 320 Mont. 211, ¶ 8, 89 P.3d 947, ¶ 8. A trial court's statutory interpretation is a question of law, which we review to determine whether it is correct. *Heath*, ¶ 8.

¶9 Questions of constitutional law are subject to plenary review by this Court and the district court's interpretation of the law is reviewed for correctness. *State v. Bedwell*, 1999 MT 206, ¶ 4, 295 Mont. 476, ¶ 4, 985 P.2d 150, ¶ 4.

## DISCUSSION

## ISSUE ONE

¶10 Whether the exception to the mandatory minimum sentence provided in § 46-18-222(3), MCA, was applicable to Webb's case.

¶11 Webb argues the District Court erred when it failed to adequately consider the

exception found at § 46-18-222(3), MCA, to the mandatory minimum sentence of § 46-18-219, MCA.  The State argues the District Court properly considered the exception and found it did not apply because Webb did not commit the crime under unusual or substantial duress.  We agree with the State.

¶12  Criminal sentencing alternatives are strictly matters of statute in Montana.  *State v. Stevens* (1993), 259 Mont. 114, 115, 854 P.2d 336, 337.  In 1995, the Montana Legislature amended § 46-18-219, MCA, to set a minimum sentence of life in prison without parole for a second conviction of any one of five enumerated offenses, including sexual intercourse without consent.  The pertinent part of the statute provides:

> **Life sentence without possibility of release.**  (1) (a) . . . [I]f an offender convicted of one of the following offenses was previously convicted of one of the following offenses . . . the offender must be sentenced to life in prison, unless the death penalty is applicable and imposed:
>
> . . . .
>
> (iii) 45-5-503, sexual intercourse without consent[.]

¶13  The Legislature further provided that the mandatory minimum sentence required under § 46-18-219, MCA, does not apply if the sentencing court concludes an exception, pursuant to § 46-18-222, MCA, is warranted.  Subsection (3) of that statute allows for relief from the mandatory life sentence if the defendant was "acting under unusual and substantial duress," at the time he committed the offense.  The pertinent part of the statute states:

> **Exceptions to mandatory minimum sentences and restrictions on deferred imposition and suspended execution of sentence.**  Mandatory minimum

sentences prescribed by the laws of this state, mandatory life sentences prescribed by 46-18-219 . . . do not apply if:

. . .

(3) the offender, at the time of the commission of the offense for which the offender is to be sentenced, was acting under unusual and substantial duress, although not such duress as would constitute a defense to the prosecution[.]

¶14 Webb contends his long history of psycho-sexual problems, his sexual fantasies, his other life struggles of losing two jobs and being evicted from his residence when the local newspaper published his status as a sex offender, his concern and anxiety about re-offending and the negligent supervision by his probation officers combined to provide sufficient duress that the District Court should have granted him an exception pursuant to § 46-18-222(3), MCA. Webb asserts the District Court simply ignored this trauma when it found he was not suffering from any psychological disorder. He argues that because the statute clearly requires "significant distress" and not a "psychological disorder," the District Court committed error by failing to consider § 46-18-222(3), MCA, in the context of his circumstances at the time he committed the crime.

¶15 Webb's argument hinges on whether the District Court failed to consider the statutory exception and whether the court erred in finding no "unusual and substantial duress." The transcript shows Webb's counsel asked the court for a finding on the applicability of the exception, the District Court specifically considered the exception, applied it to the facts and found the exception did not apply.

COURT: So you want a finding on this issue, then, based on the record?

5

MR. VAN DER HAGEN: That's correct, Your Honor.

COURT: So far that we have this hearing. Alright. Regarding the applicability of section 346-18-222(3) [sic], which is the section you're relying on; is that correct?

MR. VAN DER HAGEN: That's correct, Your Honor.

COURT: Which provides for an exception to the mandatory minimum if the offender at the time of the commission of the offense for which the offender is to be sentenced was acting under unusual and substantial duress, although not such duress as would constitute a defense to the prosecution, the court finds that anything might be called duress in the defendant's life as he's testified to was his own urge to commit crimes of this sort.

The defendant, according to the reports, the presentence report and records that we have at this point, was under no psychological disorder that would cause him to have been acting under unusual or substantial duress at the time of the commission of the offense.

Issues related to his supervision and counseling are not established by the record presented here, and I doubt could be considered evidence in any event of acting under unusual or substantial duress at the time of committing the offense.

Nor does the Court find any other factors which would satisfy the requirements of that statute. And accordingly, the Court finds that the exceptions of 46-18-222 do not apply.

The record here does not support Webb's contention that the District Court failed to consider the exception. The court's task under § 46-18-222(3), MCA, was to specifically consider and analyze whether the exception was applicable. It did so and found that the exception was not applicable to this case. Webb demonstrates no error in the District Court's determination that the sentencing exception was inapplicable. We conclude the sentence imposed by the District Court fits within the statutory parameters of § 46-18-219, MCA, and

6

the District Court correctly analyzed whether the exception found at § 46-18-222(3), MCA, applied in this matter.

## ISSUE TWO

¶16 Whether the mandatory minimum sentence set forth in § 46-18-219, MCA, violates Webb's procedural and substantive due process rights under the United States and Montana Constitutions.

¶17 Webb argues that § 46-18-219, MCA, which requires a court to sentence an offender twice convicted of sexual intercourse without consent to a minimum mandatory sentence of life in prison without the possibility of parole, is unconstitutional because it is arbitrary on several fronts, and as such, violates the Due Process Clauses of the Fifth Amendment of the United States Constitution and Article II, Section 17, of the Montana Constitution.

¶18 A person who has been convicted of an offense is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as the penalty is not cruel and unusual and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment of the United States Constitution. *Chapman v. United States* (1991), 500 U.S. 453, 465, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524, 538 *superceded* by statute on other grounds 21 U.S.C.S. § 841. Due process requires that a defendant's liberty interest, and risk of unjust deprivation of that liberty interest, be balanced against the State's interest in protecting the community. *State v. Nichols* (1986), 222 Mont. 71, 76, 720 P.2d 1157, 1161 (citing *Greenholtz v. Nebraska Penal Inmates* (1979), 422 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668). It is clear that a

7

convicted defendant's liberty interest at sentencing does not rise to the level of an accused's liberty interest at trial. *Nichols*, 222 Mont. at 76, 720 P.2d at 1161 (citing *Williams v. New York* (1949), 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed.2d 1337). However, it is also true that the rights of the defendant must be protected and due process must be observed in sentencing hearings. *Nichols*, 222 Mont. at 76, 720 P.2d at 1161 (citing *State v. Harney* (1972), 160 Mont. 55, 62, 499 P.2d 802, 805-06).

¶19 The guarantee of due process has both a procedural and a substantive component. The process requirement necessary to satisfy procedural due process comes into play only after a showing that a property or liberty interest exists. *State v. Egdorf*, 2003 MT 264, ¶ 19, 317 Mont. 436, ¶ 19, 77 P.3d 517, ¶ 19. Under the due process guarantee, every person must be given an opportunity to explain, argue and rebut any information that may lead to a deprivation of life, liberty, or property. *State v. McLeod*, 2002 MT 348, ¶ 18, 313 Mont. 358, ¶ 18, 61 P.3d 126, ¶ 18. Concerning due process at sentencing hearings, we have held that "[i]t is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by services which counsel would provide, that renders the proceedings lacking in due process." *McLeod*, ¶ 19 (citing *Townsend v. Burke* (1948), 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, 1693).

¶20 Here, Webb entered into a plea agreement and changed his plea to guilty. The District Court subsequently held a sentencing hearing where it heard testimony and oral argument. The county attorney made recommendations to the court as to the sentence to be imposed

8

while Webb's counsel made no recommendations. Webb was provided the opportunity to make a statement to the court. The parties agreed there was no legal reason why sentence should then not be imposed. Concerning procedural due process, Webb was presented with notice of the date of hearing, the presentencing information was fully disclosed in open court, he had the ability to present evidence, to confront witnesses and to participate in the sentencing proceeding. We conclude the sentencing court offered all procedural due process necessary.

¶21 The due process clause also contains a substantive component which bars arbitrary governmental actions regardless of the procedures used to implement them and serves as a check on oppressive governmental action. *Egdorf*, ¶ 19. Substantive due process primarily examines underlying substantive rights and remedies to determine whether restrictions are unreasonable or arbitrary when balanced against the purpose of the legislature in enacting the statute. *Egdorf*, ¶ 19.

¶22 This Court has set forth the following analysis for evaluating a substantive due process claim:

> A substantive due process analysis requires a test of reasonableness of a statute in relation to the State's power to enact such legislation. "The essence of substantive due process is that the State cannot use its police power to take unreasonable, arbitrary or capricious action against an individual." . . . In order to satisfy substantive due process guarantees, a statute enacted under a state's police power must be reasonably related to a permissible legislative objective.

*Egdorf*, ¶ 21. Accordingly, we turn to the legislative history of § 46-18-219, MCA, to determine whether the mandatory minimum sentence of life in prison without the possibility

9

of parole for a second conviction of sexual intercourse without consent is reasonably related to a permissive legislative goal.

¶23　In 1995, the Legislature enacted § 46-18-219, MCA. During the hearings on the proposed bill, the primary sponsor (sponsor) stated the bill "came about because of current situations where criminals were being seen in public and dangerous criminals were being released." The sponsor stated this legislation was necessary to "protect our children and our grandchildren from the very few predators of society." Issues surrounding the legislation, such as the wrongfully accused and costs to taxpayers, were discussed by proponents, opponents and committee members. In the end, the sponsor stated the purpose of the legislation was to provide that "[t]wo strikes and you are in [prison] and you are in for good." This legislative history demonstrates that the purposes in enacting the statute were to discourage recidivist criminal behavior and to protect the public.

¶24　Montana's correctional and sentencing policy is to protect the public, reduce crime, and increase the public sense of safety by incarcerating violent offenders and serious repeat offenders. Section 46-18-101(2)(b), MCA. Similarly, this Court has noted that Montana has a compelling state interest in discouraging repeat offenders through escalating criminal penalties. *Hulse v. Dep't of Justice*, 1998 MT 108, ¶ 34, 289 Mont. 1, ¶ 34, 961 P.2d 75, ¶ 34. When the Legislature enacted this statute it made a distinction between first-time offenders and repeat offenders that is not an arbitrary distinction because it fits with Montana's public policy to discourage repeat offenders and increase the public's sense of safety.

10

¶25	Webb makes several arguments to support his contention that § 46-18-219, MCA, is arbitrary and therefore unconstitutional under due process.  He first contends the statute is arbitrary because it establishes a minimum sentence for the second conviction of the same enumerated offense, but not for the second conviction of different enumerated offenses.  In essence, Webb's position is that the statute is unconstitutional because it provides different penalties for different crimes.  However, providing for criminal penalty statutes is within the province of the Legislature and as discussed above, the purpose of this legislation was not unreasonable.

¶26	Second, Webb contends § 46-18-219, MCA, is arbitrary because it is based upon the type of offense but ignores the circumstances that can be considered when determining whether the mandatory minimum sentence must be imposed.  He argues that discretion must be given to allow for a sentence that is appropriate to the offender and the crime.  However, the State points out that the statute does permit the sentencing court to deviate from the mandatory minimum sentence and impose a lesser sentence when an exception from § 46-18-222, MCA, is appropriate and applies to the case.  Additionally, § 46-18-219(1), MCA, permits the sentencing court to impose a greater sentence--the death penalty--after consideration of the circumstances of the particular case.  As such, sentencing courts do have some flexibility, albeit very limited, wherein they can consider the circumstances of each particular case.  This flexibility consideration was demonstrated here by Webb's unsuccessful attempt to invoke the exceptions to the minimum sentence.

¶27    Third, Webb contends § 46-18-219, MCA, is unconstitutional because the number of situations to which a § 46-18-222, MCA, exception may apply is "purely arbitrary." The State counters that the number of applicable situations is irrelevant. "[Webb's] suggestion, without any supporting analysis or precedent, that merely counting the number of statutory subsections is sufficient to determine the unconstitutionality of a statute falls far short of the proof required." We agree and decline to address this issue.

¶28    Fourth, Webb contends the statute is arbitrary because it makes a distinction between the offenses subject to a mandatory minimum sentence and those which are not subject to the same mandate. He gives as an example § 46-18-219(1)(a)(iv), MCA, which allows imposition of a life sentence for repeat offenses including sexual abuse of children, including instances where a person knowingly possesses any visual or print medium in which children are engaged in sexual conduct. Section 45-5-625(1)(e), MCA. Webb argues that the more serious offenses of incest, which carries a mandatory minimum sentence of four years, and sexual assault when a child is involved, which carries a mandatory minimum of two years, are not included in § 46-18-219, MCA. He maintains such anomalies illustrate the arbitrariness of the statute. However, we agree with the State's argument that Webb lacks standing to challenge the constitutionality of § 46-18-219(1)(a)(iv), MCA, because he was not sentenced pursuant to that subsection. A defendant must show a direct, personal injury resulting from application of the law in question in order to successfully challenge the constitutionality of a criminal statute. *State v. Krantz* (1990), 241 Mont. 501, 506, 788 P.2d 298, 301. We have previously declined to address alleged constitutional violations where

12

the statute complained of was not applied to the complainant. *State v. Goodwin* (1984), 208 Mont. 522, 530, 679 P.2d 231, 235. Webb has not been affected by the alleged constitutional infirmities in the statutory examples he provides, so we will not address this issue.

¶29 Finally, Webb argues the statute "violates substantive due process because it arbitrarily and capriciously prohibits the kind of individual sentencing typical of the modern criminal justice system, except in a very limited number of cases . . . ." In other words, Webb maintains that mandatory minimum sentences negatively affect the fair administration of justice. He asserts that sentencing should be left to judicial discretion and not placed into the hands of the Legislature, which at least through this statute, has imposed unfair and arbitrary sentencing classifications. He alleges that statutes which impose mandatory minimum sentences generally deny the judge the legal power to depart and give a lesser sentence, no matter how unusual the special circumstances that call for leniency and, in reality, basically transfer sentencing power to prosecutors, who can determine sentences through the charges they decide to bring against the offender. However, a review of the record demonstrates this is a case where the District Court analyzed the exception found at § 46-18-222(3), MCA, and found it did not apply to Webb.

¶30 We conclude the sentencing court correctly interpreted § 46-18-219, MCA, and afforded Webb due process when it sentenced him within the statutory sentencing limits to life in prison without the possibility of parole.

**ISSUE THREE**

13

¶31    Whether the mandatory minimum sentence set forth in § 46-18-219, MCA, violates the prohibition against cruel and unusual punishment under Article II, Section 22, of the Montana Constitution both on its face and as applied.

¶32    Webb argues the mandatory minimum sentence set forth in § 46-18-219, MCA, violates the prohibition against cruel and unusual punishment because, although it falls within the statutory maximum, it is so disproportionate to the crime that it shocks the conscience and outrages the moral sense of the community or of justice. *See State v. Tadewaldt* (1996), 277 Mont. 261, 270-71, 922 P.2d 463, 469. He asserts this is particularly true because the statute does not give him an opportunity for parole, even if he rehabilitates himself. The statute, Webb contends, is cruel and unusual in that, once rehabilitated, it does not allow him an opportunity to return to the community.

¶33    Webb is a serial rapist and has demonstrated it is not likely he will be rehabilitated. The District Court listened to testimony by the defendant, victim, social worker and a probation and parole officer during the sentencing hearing. It also considered factors contained in the State's correctional and sentencing policy in light of the facts of this case. The District Court noted the following observations which supported its sentence and the inapplicability of the exception to the mandatory minimum sentence:

> This Defendant served over 6 years for the identical crime. He went through Phases I and II of the Montana State Prison Sex Offender Program. Yet within 4 months of release, he reoffended. The psychosexual evaluation of Dr. Scolatti offers virtually no hope of rehabilitation. Mr. Webb is found to be in the 98[th] percentile for risk for violent recidivism. Dr. Scolatti says there is no way to tell or guarantee that if released in 25 years the Defendant will be able to manage his deviant sexual behavior.

14

> The Defendant admits to at least 3 rapes. Dr. Scolatti and earlier Mr. Silvers in 1995 indicated a long-standing sexual offense history.
>
> Dr. Scolatti rated him and the Court finds the Defendant to be a Level 3, high risk to reoffend.
>
> The victim has suffered irreparable harm. She has been in counseling and her epileptic seizures occur more often.
>
> In short, Mr. Webb is a guaranteed danger to society. He cannot ever be allowed on the streets again.

The District Court was not convinced that Webb would ever cease being a danger to the public and observed, "This is a grave offense particularly when it is a repeated crime. It seems that a sentence of life without parole is commensurate with the gravity of this crime."

¶34    The general rule regarding sentencing is that a sentence within the maximum statutory guidelines does not violate the Eighth Amendment prohibition against cruel and unusual punishment. *State v. Dahms* (1992), 252 Mont. 1, 13, 825 P.2d 1214, 1221. Here, Webb's sentence is within the statutory guidelines set out in § 46-18-219, MCA. We therefore reject Webb's argument.

## ISSUE FOUR

¶35    Whether the mandatory minimum sentence set forth in § 46-18-219, MCA, violates Article II, Section 28(1), of the Montana Constitution.

¶36    Article III, Section 1, of the Montana Constitution divides the power of government into three distinct branches--legislative, executive and judicial. The power scheme regarding criminal sentencing statutes is that the legislative branch enacts statutes, such as § 46-18-219, MCA; the judicial branch construes and interprets legislative acts and determines whether

15

a particular law conforms to the Constitution; and the executive branch enforces those statutes.

¶37 It is within the province of the legislature to distinguish between criminal offenses and to establish punishments. *State v. Bruns* (1984), 213 Mont. 372, 378, 691 P.2d 817, 821 (citation omitted). This power to enact criminal punishment statutes "shall be founded on the principles of prevention, reformation, public safety, and restitution for victims." Art. II, Sec. 28(1), Mont. Const. The Legislature used its power to enact § 46-18-219, MCA, based upon constitutional principles and Montana public policy. We have reviewed the statute and the arguments presented by Webb and conclude there is no violation of separation of powers concerning the mandatory minimum sentence given to Webb pursuant to § 46-18-219, MCA.

¶38 The District Court is affirmed on all issues.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART

16