FILED

08/18/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0247

DA 18-0247

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 207N

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

MICHAEL DAVID WILSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                    In and For the County of Custer, Cause No. DC 17-67
                    Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Shannon Sweeney, Attorney at Law, Anaconda, Montana

       For Appellee:

       Timothy C. Fox, Montana Attorney General, Michael P. Dougherty, Assistant Attorney General, Helena, Montana

       Wyatt A. Glade, Custer County Attorney, Miles City, Montana

Submitted on Briefs:  May 27, 2020

Decided:  August 18, 2020

Filed:

                  _____
                            Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1	Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited, and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2	Defendant Michael David Wilson appeals the March 12, 2018 Judgment and Sentencing Order entered by the Sixteenth Judicial District Court, Custer County, following his conviction of Criminal Possession of Dangerous Drugs with Intent to Distribute, Marijuana, a felony, in violation of § 45-9-103, MCA. Wilson argues: (1) that the District Court erred by determining that particularized suspicion existed to perform a canine sniff search of his vehicle; and (2) that the District Court erred when it imposed a fine pursuant to § 45-9-130(1), MCA, which we have previously held to be facially unconstitutional. We affirm the District Court's determination regarding particularized suspicion. We reverse the District Court's imposition of the fine and remand for further proceedings consistent with this Opinion.

¶3	On July 31, 2017, Trooper Kilpela of the Montana Highway Patrol was patrolling Interstate 94 in Custer County, Montana when he observed a vehicle traveling 53 miles per hour in a construction zone with a posted speed limit of 45 miles per hour. Trooper Kilpela stopped the vehicle and approached the driver, identified by his Washington state driver's license as Wilson. Trooper Kilpela observed cigarettes, trash, and energy drinks scattered throughout the car. Trooper Kilpela also noticed the odor of cigarette smoke and observed a single piece of luggage in the back seat. When Trooper Kilpela asked for the vehicle's

insurance and registration information, Wilson handed Trooper Kilpela the rental vehicle contract and explained that the vehicle had been rented by his common law wife in Washington. Trooper Kilpela informed Wilson that he was going to give Wilson a warning citation for speeding and requested that Wilson follow him to his patrol vehicle so that he could verify Wilson's information. Wilson agreed, and sat in the front seat of the patrol vehicle while Trooper Kilpela verified Wilson's information. Trooper Kilpela's drug-detecting canine was kenneled in the back seat.

¶4 While in the patrol vehicle, Trooper Kilpela asked Wilson about his travel plans. Wilson explained that he planned to travel through North Dakota on his way to visit family and friends in Nebraska, "maybe" travel to Oklahoma and then Rhode Island, ending up in Boston, Massachusetts, where he would return the rental car and fly back to Washington. Wilson admitted he "didn't really have a timeline" for getting back home to Washington but later stated he planned to travel for about a week. Trooper Kilpela noted the rental contract listed New Hampshire, not Massachusetts, as the return state for the rental vehicle and that Wilson was not listed on the contract as an authorized driver.

¶5 Trooper Kilpela requested dispatch to conduct a Triple I (Interstate Identification Index) criminal background check, which revealed Wilson had a 2016 marijuana trafficking charge out of the state of Kentucky. Wilson admitted to the prior charge but gave inconsistent responses regarding the amount of marijuana he was charged with possessing.

¶6 Trooper Muri arrived to assist shortly thereafter and stood outside the passenger side of Trooper Kilpela's vehicle. As Trooper Kilpela was in the process of writing Wilson's

3

citation warning, Trooper Muri leaned into the window of the vehicle and began questioning Wilson about his travel plans. The troopers then began asking Wilson about the contents of the rental vehicle's trunk. Wilson stated he had never opened the trunk but admitted he had leaned on it earlier while smoking a cigarette outside the car. Both troopers observed that the trunk had fingerprints consistent with someone opening and closing the trunk. Trooper Muri asked Wilson "how much weed" he was carrying in the vehicle. Wilson denied carrying any marijuana. Wilson consented to a search of his luggage but denied consent to search the vehicle. Trooper Kilpela deployed his canine to conduct a sniff search of the exterior of Wilson's vehicle, who alerted to the presence of illegal drugs. Trooper Kilpela later obtained and executed a search warrant for Wilson's vehicle and located approximately 111 pounds of marijuana.

¶7 On August 14, 2017, the State charged Wilson with one count of Criminal Possession of Dangerous Drugs with Intent to Distribute, Marijuana. On October 27, 2017, Wilson moved to suppress all evidence obtained pursuant to execution of the search warrant of his rental vehicle. Wilson asserted the search warrant was invalid because it was based on Wilson's illegally obtained statements and an illegal canine sniff search of the vehicle.

¶8 The District Court held a hearing, at which Trooper Kilpela testified. Trooper Kilpela stated that when he initially approached Wilson to verify his identity and the vehicle's registration status, he observed that Wilson's name did not appear on the vehicle's rental contract and that the vehicle had been rented to a female with a different last name. Trooper Kilpela also testified that the cigarettes, coffee, snacks, and clutter

4

littered throughout Wilson's vehicle showed evidence of "hard travel," indicating Wilson was attempting to get quickly "from point A to point B." Trooper Kilpela stated that he noticed Wilson's vehicle smelled "heavily" of cigarette smoke, and that most rental vehicles do not allow smoking. Trooper Kilpela explained that drug traffickers typically use the smell of cigarette smoke to mask the odors of contraband in the vehicle. Trooper Kilpela also noticed that Wilson became increasingly "nervous" and "agitated" throughout the stop. These facts, among others,[1] indicated to Trooper Kilpela that Wilson was involved in drug trafficking. Trooper Kilpela explained that drug traffickers often use rental vehicles to transport large amounts of contraband so that they can more easily disclaim knowledge of the drugs or other contraband discovered inside.

¶9    On December 6, 2017, the District Court denied Wilson's motion to suppress evidence. Wilson entered a conditional plea of guilty reserving his right to appeal. After a hearing, Wilson was sentenced to the Montana Department of Corrections for a ten-year commitment with five years suspended. Pursuant to § 45-9-130, MCA, the District Court also imposed a mandatory fine of $97,125 with all but $5,000 suspended, an amount based on 35% of the market value of the possessed marijuana. Wilson appeals.

¶10    We review a district court's ruling on a motion to suppress evidence to determine whether the court's underlying findings of fact are clearly erroneous and whether those findings were applied correctly as a matter of law. *State v. Wilson*, 2018 MT 268, ¶ 21,

---

[1] Trooper Kilpela also testified that Wilson was traveling from a marijuana "source state" like Washington, where marijuana is widely produced and accessible, as a factor. We do not consider this factor in our assessment of whether there was particularized suspicion for the canine search.

393 Mont. 238, 430 P.3d 77. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite or firm conviction that a mistake has been made. *Wilson*, ¶ 21. *See also State v. Munson*, 2007 MT 222, ¶ 18, 339 Mont. 68, 169 P.3d 364.

¶11 We review a criminal sentence imposed by a district court "for legality only, confining [our] review to whether the sentence falls within the parameters set by statute." *State v. Dunfee*, 2005 MT 147, ¶ 46, 52, 327 Mont. 335, 114 P.3d 217 (citing *State v. Webb*, 2005 MT 5, ¶ 8, 325 Mont. 317, 106 P.3d 521; *State v. Eaton*, 2004 MT 283, ¶ 13, 323 Mont. 287, 99 P.3d 661). "We review a claim that a sentence violates a constitutional provision de novo." *State v. Ber Lee Yang*, 2019 MT 266, ¶ 8, 397 Mont. 486, 452 P.3d 897.

¶12 Wilson first argues the District Court erred by determining that particularized suspicion existed to perform a canine sniff search of his vehicle. A criminal defendant has the state and federal constitutional right against unreasonable governmental searches and seizures. *City of Missoula v. Kroschel*, 2018 MT 142, ¶ 10, 391 Mont. 457, 419 P.3d 1208 (citing U.S. Const. amend. IV; Mont. Const. art. II, § 11). A search or seizure conducted without a judicial warrant issued on probable cause is considered per se unreasonable absent a valid exception. *Kroschel*, ¶ 10.

¶13 A recognized exception to the warrant requirement is the traffic stop. *Wilson*, ¶ 25 (citing *State v. Elison*, 2000 MT 288, ¶ 15, 302 Mont. 228, 14 P.3d 456); *Kroschel*, ¶ 11. As with any temporary investigative stop, "a law enforcement officer must have

particularized suspicion that the occupant of the vehicle is or has been engaged in unlawful behavior" before initiating the stop. *Wilson*, ¶ 25 (citing § 46-5-401, MCA). Particularized suspicion is "objective data from which an experienced police officer can make certain inferences and a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing." *Wilson*, ¶ 28. "Whether particularized suspicion exists at the time of an investigative stop is a question of fact which is determined by considering the totality of the circumstances." *Elison*, ¶ 16. When evaluating the totality of the circumstances, we consider "the quantity, or content, and quality, or degree of reliability, of the information available to the officer." *Elison*, ¶ 16 (quotations omitted).

¶14    A traffic stop may only last as long as necessary "to effectuate the purpose of the stop." *Wilson*, ¶ 25 (citing § 46-5-403, MCA). The stop "may be prolonged and the scope of the investigation may be broadened if the investigation remains within the limits created by the facts and the suspicions from which they arose." *Wilson*, ¶ 25. Additionally, "[t]he justification for [the] stop may change as officers acquire additional information." *Wilson*, ¶ 25.

¶15    A canine sniff of a vehicle constitutes a search for Fourth Amendment purposes. *Wilson*, ¶ 26. Because of its "minimally intrusive nature," a law enforcement officer needs only particularized suspicion before deploying his canine to conduct a sniff search of the exterior of the vehicle. *Wilson*, ¶ 26.

¶16    After Trooper Kilpela stopped Wilson for speeding in a construction zone, he observed that Wilson was traveling alone in a vehicle that had been rented by a third-party, and he was not listed as an authorized driver of the vehicle. Trooper Kilpela observed that

7

the condition of the interior of Wilson's vehicle indicated that Wilson intended to drive an extensive distance for long periods of time without stopping, and that the rental vehicle smelled strongly of cigarette smoke, which is typically not allowed by rental companies, but which is commonly used to mask the smell of contraband in a vehicle. In verifying Wilson's information, Trooper Kilpela discovered Wilson's recent marijuana trafficking charge out of Kentucky.[2] Trooper Kilpela testified that in his training and experience, individuals trafficking illegal drugs often use rental vehicles to transport drugs. Considering the totality of these facts in light of Trooper Kilpela's training and experience, we determine particularized suspicion existed to perform a canine sniff search of Wilson's vehicle.

¶17 Wilson also argues that the statements he made to Trooper Kilpela regarding his travel plans were the product of a custodial interrogation and should be suppressed pursuant to the Fifth Amendment to the United States Constitution and Article II, § 25 of the Montana Constitution. *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); Mont. Const. art. II, § 25 ("No person shall be compelled to testify against himself in a criminal proceeding."). We make no determination as to whether these statements Wilson made were the product of a custodial interrogation because even if we assume, for the sake of argument, that Wilson was subjected to a custodial interrogation and that his statements regarding his travel plans

---

[2] Wilson makes no argument that the Triple I criminal background check revealing his drug trafficking charge out of Kentucky was improper.

should be suppressed, Trooper Kilpela's particularized suspicion for the canine sniff search derived from his personal observations of the condition of Wilson's rental vehicle, as detailed above, the fact that the Triple I criminal background check revealed Wilson's recent drug trafficking charge, and Wilson's responses to routine questioning regarding Wilson's identity and driving status, *see* § 46-5-401(2)(a), MCA (A law enforcement officer conducting a temporary investigative stop may "request the person's name and present address and an explanation of the person's actions and, if the person is the driver of the vehicle, demand the person's driver's license and the vehicle's registration and proof of insurance . . . ."); *Kroschel*, ¶ 14 (citing *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185, 124 S. Ct. 2451 (2004)) (An officer's questions regarding a suspect's identity "are a routine and permissible part of a typical temporary investigative stop" and do not violate the Fourth Amendment) (internal quotations and original alterations omitted). Because we ultimately resolve this case on Fourth Amendment grounds, exclusive of any incriminating statements Wilson may have made, we decline to substantively address Wilson's Fifth Amendment arguments.

¶18 Next, Wilson argues the District Court erred when it imposed a fine pursuant to § 45-9-130(1), MCA, which we have previously held to be facially unconstitutional. A criminal defendant has the state and federal constitutional right to be free from excessive fines. U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); Mont. Const. art. II, § 22 ("Excessive bail shall not be required, or excessive fines imposed, or cruel and unusual punishments inflicted."). In *Yang*, we held that § 45-9-130(1), MCA, which requires a

9

district court to impose a mandatory 35%-market-value fine in drug possession convictions, is facially unconstitutional in violation of the Eighth Amendment and Mont. Const. art. II, § 22, because the statute requires a sentencing court to impose the mandatory fine without considering whether the fine is excessive. *Yang*, ¶ 23 ("No set of circumstances exist under which § 45-9-130(1), MCA, is valid—the statute is unconstitutional in all of its applications because it completely prohibits a district court from considering whether the 35%-market-value fine is grossly disproportionate to the offense committed.").

¶19 The District Court in this case heard testimony regarding Wilson's ability to pay the mandatory fine imposed under § 45-9-130(1), MCA, and it exercised some discretion by suspending most of the fine. However, the District Court still imposed the full amount of the fine pursuant to a statute declared unconstitutional in all of its applications. We reverse and remand to the District Court for resentencing.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. We affirm the District Court's determination that particularized suspicion existed to support the canine sniff search of Wilson's vehicle. We reverse the District Court's imposition of the fine pursuant to § 45-9-130(1), MCA, and remand for resentencing.

/S/ JAMES JEREMIAH SHEA

10

We Concur:

/S/ MIKE McGRATH

Justice Jim Rice, concurring.

¶21 I agree with the Court's decision under Issue 1, regarding particularized suspicion. Under Issue 2, the Court reverses the sentence, despite the District Court's consideration here of the Defendant's ability to pay under § 46-18-231(3), MCA, precisely the purpose of the remand in *Yang*, *see Yang*, ¶ 28; and despite the District Court's suspension of most of the statutory fine upon that consideration. There is no doubt that the sentence here was constitutionally imposed, but the Court is forced to reverse it nonetheless in light of its "sweeping declaration that § 45-9-130(1), MCA, 'is facially unconstitutional in all of its applications.'" *Yang*, ¶ 38 (Rice, J., dissenting). The collateral damage in this case underscores what was said at the time—the decision in *Yang* was not only overbroad, but decided "contrary to controlling constitutional authority" and our long established precedent governing facial challenges. *Yang*, ¶ 38 (Rice, J., dissenting). However, that is now the law, and I concur.

/S/ JIM RICE

Justice Beth Baker joins in the concurring Opinion of Justice Rice.

/S/ BETH BAKER

11

Justice Laurie McKinnon, dissenting.

¶22 In my opinion, Trooper Kilpela lacked the particularized suspicion required to *extend* the stop into a drug trafficking investigation and subsequent canine search. The Court examines all of the facts accumulated during the entirety of the stop, which extended beyond what was necessary to effectuate the purpose of issuing a warning for speeding, and concludes that all of these facts together add up to particularized suspicion for the canine search. I dissent.

¶23 In Montana, an investigative stop "may not last longer than is necessary to effectuate the purpose of the stop." Section 46-5-403, MCA. However, a stop may be prolonged and the scope of the investigation may be broadened if the investigation remains within the limits created by the facts and the suspicions from which they arose. *Wilson*, ¶ 25. The justification for a stop may change as officers acquire additional information. *Wilson*, ¶ 25. Therefore, before Trooper Kilpela could extend the stop beyond that necessary to issue a warning for speeding, he needed particularized suspicion of some additional criminal activity that Wilson was involved in. Where the purpose of the stop was to issue Wilson a warning for traveling 8 mph over the speed limit, the justification for the stop ends upon issuance of a warning, absent some objective facts permitting an inference of further wrongdoing warranting more investigation.

¶24 Instead, Trooper Kilpela, a member of a state-specialized drug trafficking interdiction team covering Interstates 90 and 94 from Billings, Montana, east to North Dakota, on patrol with his drug-detecting canine, had Wilson exit his car and sit in the passenger's seat of Trooper Kilpela's police cruiser with the canine seated in the

12

backseat behind Wilson. Within minutes of being stopped, another officer, Trooper Muri, approached from the passenger side, placing troopers on both sides of Wilson and a drug-detecting canine behind him. The stop lasted approximately 45 minutes. At the time Wilson was asked to exit his vehicle and sit in the police cruiser, the only facts Trooper Kilpela had ascertained were: (1) that Wilson was driving a rental vehicle from a "source" state; (2) signs of "hard travel"; and (3) indications of Wilson's lengthy road trip, including cigarette smoke and snacks in the vehicle. While these facts were acquired during a lawful stop for speeding, they did not support a suspicion that Wilson was engaged in drug trafficking or other wrongdoing which would warrant extending the stop by having Wilson enter into the police cruiser. Once Wilson was located next to Trooper Kilpela's canine and in the presence of Trooper Muri, Trooper Kilpela continued his "general conversation" with Wilson and amassed a bundle of innocuous facts which Trooper Kilpela testified, in his experience as an "elite" trooper in drug interdiction, all added up to suspicion that Wilson was trafficking drugs. The objective facts learned during this unwarranted extension of the stop were that Wilson was embarking on an indirect travel route; was becoming nervous; and had a pending charge for trafficking marijuana in another state. During Wilson's suppression hearing, the State admitted that none of these facts supported, by themselves, an inference of wrongdoing.

¶25 Perhaps, as the Court reasons, by the time Trooper Kilpela deployed "Meeka," his canine, he had accumulated enough facts to support particularized suspicion of wrongdoing based on his high level of experience and expertise. However, that is not the dispositive issue and is secondary to determining whether facts supported extension of the stop beyond

13

the initial justification of speeding—here, done while Wilson was in Trooper Kilpela's police cruiser for a speeding violation; officers were present on both sides of the vehicle; and a drug-detecting canine was in the backseat. Contrary to the Court's reasoning, the question is not whether there was particularized suspicion for the canine sniff, but whether the facts here justified extending the stop for further investigation. An unwarranted extension of the stop, and then using the facts subsequently acquired to nonetheless support particularized suspicion, contravenes § 46-5-403, MCA—that the stop must last no longer than necessary to effectuate the purpose of the stop.

¶26 In my opinion, there was not a basis to extend this stop beyond that necessary to issue Wilson a warning for speeding. I respectfully dissent.


/S/ LAURIE McKINNON


Justices Ingrid Gustafson and Dirk Sandefur join in the Dissent of Justice Laurie McKinnon.


/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

14