No. 05-181

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 259

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

WILLIAM WELLS HARPER,

        Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli, Cause No. DV 04-132,
The Honorable James A. Haynes, Presiding Judge.

COUNSEL OF RECORD:

    For Appellant:

        Mathew M. Stevenson, Attorney at Law, Missoula, Montana

    For Respondent:

        Hon. Mike McGrath, Attorney General; Ilka Becker, Assistant Attorney
General, Helena, Montana

        George Corn, County Attorney; T. Geoffrey Mahar, Deputy County
Attorney, Hamilton, Montana

_____

Submitted on Briefs:  January 5, 2006

Decided:  October 10, 2006

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1      William Wells Harper (Harper) appeals from the sentence imposed by the Twenty-First Judicial District Court, Ravalli County.  We affirm.

¶2      We restate and address the issue on appeal as follows:  Did the District Court err in basing Harper's sentence on factors not supported by the record?

¶3      After executing a search warrant on Harper's home on June 10, 2004, the State charged Harper with felony criminal distribution of dangerous drugs, felony criminal possession of dangerous drugs, and misdemeanor criminal possession of drug paraphernalia.  Harper entered into a plea agreement and agreed to plead guilty to an amended information containing only one charge, criminal possession of dangerous drugs with intent to distribute.  The State agreed to recommend a twenty-year suspended sentence if Harper contributed $20,000 to the Ravalli County Sheriff's Drug Fund.  If Harper failed to make this contribution, the State agreed to recommend a twenty-year sentence with fifteen years suspended and five years served at the Montana State Prison.  Pursuant to § 46-12-211(1)(b) and (4), MCA, the plea agreement provided that Harper could withdraw his guilty plea if the District Court did not accept the plea agreement.  On October 4, 2004, the State filed the Amended Information and Harper entered his guilty plea.

¶4      A pre-sentence investigation report (PSI) was then prepared and copies were sent to Harper, the prosecutor, and the District Court.  The following information was contained in the PSI and before the District Court at the time of sentencing.

2

¶5    On June 10, 2004, Ravalli County law enforcement executed a search warrant at the residence Harper shared with his wife, Heather Harper (Heather), on a dead-end street. The search warrant included a blue Nissan station wagon. When law enforcement arrived, two adults and two children were sitting in this station wagon. One of the officers knew the person in the driver's seat to be a drug user and close associate of the Harpers. This person was searched and a pipe which she admitted using to smoke methamphetamine was found on her person.

¶6    Another officer saw a green passenger car with three occupants slow down while driving past the Harper residence. After turning around at the end of the street, the car came back at a high rate of speed, and the officer could no longer see the two passengers. Officers pursued and stopped the car. The driver admitted possession of a packet containing 11 grams of powdered cocaine. One of the passengers, Malinde Horvath (Horvath), told authorities that she sold methamphetamine to the Harpers. The other passenger admitted ingesting methamphetamine.

¶7    The search warrant also included Heather's vehicle. When officers stopped Heather in that vehicle she denied using methamphetamine, but said that her husband, Harper, used methamphetamine and had drug paraphernalia in their residence. Heather said Harper bought the methamphetamine from Horvath. The officer interviewing Heather noted that she appeared to be under the influence of methamphetamine.

¶8    During the search of the Harper residence, officers found plastic baggies with apparent drug residue, glass pipes, straws used for methamphetamine ingestion, torches, a

pencil torch, two sets of scales, a baggy with Q-tips, and at least ten baggies of crystal methamphetamine.

¶9　Also during the search, another vehicle, which confidential sources had previously informed law enforcement frequented Harper's residence, pulled into the driveway. One of the occupants, a fifteen-year-old, possessed a pipe and a baggy containing what appeared to be methamphetamine. The other occupant, a seventeen-year-old, possessed a pipe and a baggy containing marijuana residue. The vehicle contained a black case with a vial that appeared to contain methamphetamine residue, as well as a pipe. Both occupants of this vehicle tested positive for THC and methamphetamine.

¶10　The PSI also informed the District Court that prior to the time that law enforcement executed the search warrant, a confidential informant had sold methamphetamine to the Harpers. Law enforcement also had information that the Harpers sold at least twenty grams of methamphetamine per week. A concerned citizen had reported that numerous vehicles went to and from the Harper residence, and another concerned citizen found a baggy containing a powdery substance in the road near the Harper residence.

¶11　In addition to the information stated above, the PSI noted Harper's "very long history of a severe addiction to drugs and little likelihood of conquering that addiction out in the community or even in a thirty day inpatient program." The PSI also informed the District Court that one of Harper's neighbors had written a letter which was attached to Heather's PSI explaining that the activities at the Harper residence kept them up all night, the Harpers stole their electricity, and the visitors at the Harper residence tried to "pick

up" their daughter and her friends. These activities made the neighbors worry about their teenage children and feel unsafe in their own home.

¶12 The author of the PSI disagreed with the plea agreement and recommended a twenty-year sentence to the Montana State Prison with ten years suspended. The District Court rejected the plea agreement and offered Harper the opportunity to withdraw his guilty plea. Harper declined the opportunity to withdraw his plea and instead proceeded to sentencing.

¶13 Although during the sentencing hearing Harper's counsel objected to certain information in the PSI, none of the four witnesses called on Harper's behalf testified regarding these objections. Rather, all four witnesses – Phoebe Harper, the Defendant's mother, two individuals involved in faith-based treatment, and an addiction counselor – testified concerning Harper's character and his potential for rehabilitation.

¶14 Following the witnesses' testimony and before judgment was pronounced, Harper made a statement to the court as follows:

> First I would like to apologize for my part in this. When I came to Ravalli County, I truly did not want to do drugs. I came with my wife. She was pregnant. We had a lot of – In Kansas City it was just a lot of drug dealers everywhere. You could hardly escape from the stuff even if you want to.
>
> We came here hoping to start over new. We were doing well, and we stayed clean for a long time. We had a baby, little Will.
>
> My wife was shopping one day at Super 1 and met some people, and we got involved, and I just – I'm ashamed and – Excuse me.
>
> So through all this I have had a big change, and I do believe I have the help now that I was lacking before. I would just hope that I could pay the 20,000 in fines over the next year and remain at the Isaac's House program. That would enable me to pay my fines, pay my lawyer fees. I gladly would

5

pay them. At the time when I was in jail, I couldn't. And yeah, the 5,000 did become available. At the last minute, my sister talked to her son about giving their vacation money up for me in hopes that I could start a new life. She believed in me. That's where that did come from. So I apologize if it looks like I was trying to get an attorney without paying for it. I have no intention of that. I want to pay all the costs. I believe I can do that in the next year if given the opportunity.

Again, I accept whatever sentence imposed, and I apologize for all of this.

¶15 The District Court followed the recommendation of the PSI and sentenced Harper to twenty years at Montana State Prison with ten years suspended, and a $12,000 fine. The District Court explained:

My view of this case really is that you were the hub of this methamphetamine distribution operation . . . . From what I see in the Pre-Sentence Investigation Report, from your neighbors' report, you had a variety of people regularly coming and going from your house related to this operation.

The District Court stated as its reason for its sentence:

(B)ecause I view you as basically the center of this operation and the hub of this operation, it's, in my view, appropriate that you receive a sentence that's commensurate with your involvement and your engagement in this activity.

¶16 Harper now appeals claiming the information upon which the District Court based its sentence was inaccurate and insufficient.

¶17 This Court reviews a criminal sentence for its legality. *State v. Webb*, 2005 MT 5, ¶ 8, 325 Mont. 317, ¶ 8, 106 P.3d 521, ¶ 8; *State v. Eaton*, 2004 MT 283, ¶ 11, 323 Mont. 287, ¶ 11, 99 P.3d 661, ¶ 11. Generally, a sentence is legal if it falls within the statutory limits. *State v. Gordon*, 1999 MT 169, ¶ 45, 295 Mont. 183, ¶ 45, 983 P.2d 377, ¶ 45 (citing *State v. Romannose*, 281 Mont. 84, 94, 931 P.2d 1304, 1311 (1997)).

6

¶18	Harper argues that the sentence imposed by the District Court violates his right to due process because it is based on insufficient factual support. A convicted criminal defendant has a due process right to be sentenced based on correct information. *State v. Bar-Jonah*, 2004 MT 344, ¶ 120, 324 Mont. 278, ¶ 120, 102 P.3d 1229, ¶ 120; *State v. Mason*, 2003 MT 371, ¶ 21, 319 Mont. 117, ¶ 21, 82 P.3d 903, ¶ 21. However, in seeking to overturn a sentence, the defendant has an affirmative duty to show the alleged misinformation is materially inaccurate. *Bar-Jonah*, ¶ 120. Merely claiming the information is invalid is insufficient. *Bar-Jonah*, ¶ 120; *State v. Radi*, 185 Mont. 38, 41, 604 P.2d 318, 320 (1979). Similarly, a defendant also has an affirmative duty to present information establishing inaccuracies when contesting matters in a PSI. *Mason*, ¶ 21.

¶19	Generally, this Court will not address an argument or issue where the appellant failed to contemporaneously object or otherwise raise the issue in the district court. *State v. Todd*, 2005 MT 108, ¶ 19, 327 Mont. 65, ¶ 19, 111 P.3d 677, ¶ 19. In this case, the District Court inquired whether either party had changes or corrections to the PSI near the beginning of the sentencing hearing. Harper's counsel responded:

> Yes, Your Honor, thank you. There are a number, Your Honor. On Page 4 there is an enumeration in paragraph – the fourth full paragraph regarding the number of paraphernalia items – torches, scales, baggies, Q-tips, these sorts of things – and sort of alluded that those items belonged to Will Harper; and he contends they did not.
>
> Also that a confidential informant . . . had purchased from Will and Heather Harper. Mr. Harper contends that that purchase was made through Heather alone.
>
> First line of Page 5, that Defendant acknowledged that his use and involvement with drugs facilitated his wife becoming involved. In point of fact, it is Mr. Harper's contention that Ms. Harper's involvement with the

7

co-actors in this case, individuals with whom Your Honor is well-acquainted, actually facilitated Will's reinvolvement with drugs.

And on Page 7 it's alluded that he does not deem treatment necessary nor that he has taken the initiative to involve himself in treatment. Mr. Harper has been accountable from the beginning that he had needed treatment, and that's One. Number 2, he has been going to Crossroads now for three weeks. And Number 3, we would contend that his involvement through the Isaac's House for the last 13 weeks does constitute treatment.

And the last thing, Your Honor, is on Page 7, middle of Paragraph 2, that "Defendant has a very long history of a severe addiction to drugs and little likelihood of conquering that addiction." Your Honor, Mr. Harper's contention is that he conveyed this information to the writer of this PSI, that he actually had 13 years of freedom from drugs during the '90s and the early part of this decade but that that information was not included in the PSI. So it's not so much corrections of actual falsehoods, Your Honor, as maybe just a lack of overall clarity of the picture. Certainly we don't want to come off as Mr. Harper failing to be accountable for his behavior, and he will make a statement to that effect at the end when it pleases the Court.

¶20 Granting Harper the benefit of the doubt, we will in this instance consider this response sufficient to constitute an objection to the sufficiency of the information upon which the sentence was based. Thus, we consider the merits of the issue Harper raises on appeal.

¶21 In order to show the District Court relied on materially inaccurate information to sentence Harper, he had an affirmative duty to provide exhibits or testimony which would explain or rebut such information. *See Bar-Jonah*, ¶ 120. None of the four witnesses Harper called on his behalf during the sentencing hearing made any efforts to contest or explain the information contained in the PSI. Rather, all four testified only to Harper's character and potential for rehabilitation. Harper did not contest the truth of any of the information in the PSI when he addressed the court.

8

¶22 Harper is correct in pointing out that a letter quoted in his PSI was actually written for use in Heather's criminal case. He is also correct that the PSI took facts from the original Information which included charges to which Harper had not pled guilty. However, when imposing a sentence, a sentencing court can consider any relevant information relating to the nature and circumstances of the crime, the character of the defendant, the defendant's background and history, the defendant's mental and physical condition, and any other information the sentencing court considers having probative force. *Mason*, ¶ 23; *State v. Collier*, 277 Mont. 46, 63, 919 P.2d 376, 387 (1996).

¶23 In sentencing Harper, the District Court did nothing more than consider relevant information relating to the nature and circumstances of the possession of drugs found during the search of Harper's home. *See Mason*, ¶ 23; *Collier*, 277 Mont. at 63, 919 P.2d at 387. The PSI information to which Harper objects simply underscores his involvement in drug distribution and tends to support the charge to which he plead guilty. Given the court's broad discretion in sentencing, we will not fault the District Court for considering the information the State presented, rather than Harper's unsupported contentions.

¶24 Harper's main contention is that the District Court referred to him as "the hub of this operation." He says this reference indicates the court sentenced him as if he was the center of a methamphetamine distribution operation. He argues that the information provided to the District Court is insufficient to reach this conclusion.

¶25 The information noted above in ¶¶ 5-11, and ¶ 14, however, does indicate that Harper was at the center of a methamphetamine distribution business conducted out of his home. It was properly before the District Court and Harper presented no contrary

9

information.  The District Court did not err in imposing a sentence within the statutory parameters.

¶26    Harper additionally argues that his sentence violates the holding of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). We need not consider this argument, however, because the sentence he received is less than the statutory maximum possible under § 45-9-103(3), MCA, and the rule from *Apprendi* only applies when the sentence goes "beyond the prescribed statutory maximum."  530 U.S. at 490, 120 S. Ct. at 2362-63.  Harper's argument based on *Apprendi* is without merit.

¶27    Affirmed.


                                                            /S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS