DA 06-0335

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 205

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

OLIVER DAVID WALKER,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DC 2005-163
Honorable Kurt Krueger, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Shannon L. McDonald,
          Assistant Appellate Defender, Helena, Montana

      For Respondent:

          Hon. Mike McGrath, Montana Attorney General, John Allan Paulson,
          Assistant Attorney General, Helena, Montana

          Robert M. McCarthy, Silver Bow County Attorney, Michael W. Clague,
          Deputy County Attorney, Butte, Montana


Submitted on Briefs:  June 13, 2007

Decided:  August 20, 2007


Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Oliver David Walker (Walker) appeals the sentencing order of the Second Judicial District, Silver Bow County.  We affirm.

¶2     Walker raises the following issues for review:

¶3     1.  Whether the District Court properly ordered Walker to pay restitution to a bail bondsman as part of his sentence for bail jumping.

¶4     2.  Whether the District Court properly considered uncharged conduct at Walker's sentencing.

## FACTUAL AND PROCEDURAL HISTORY

¶5     Law enforcement officers arrested Walker for burglary and partner family member assault in February 2005.  The Justice Court set Walker's bond for $100,000.  Barry Bail Bonds posted the $100,000 bond for Walker's release from jail on February 26, 2005. Walker charged four credit cards to pay for the $10,000 fee that Barry Bail Bonds charged for this service.  Walker also charged a fifth credit card for a $200 cash advance from Barry Bail Bonds.  Walker's credit cards initially cleared but later "unraveled" about a month after his release from jail.  Barry Bail Bonds never received payment.

¶6     Walker failed to appear for his arraignment in District Court on March 24, 2005.  The court issued a warrant for Walker's arrest.  Barry Bail Bonds launched its own search for Walker, tracking him first to a house in Utah and then to Florida.  Authorities eventually arrested Walker in Florida and extradited him to Butte.

¶7     The State charged Walker with felony bail jumping in violation of § 45-7-308(1), MCA, based on Walker's failure to appear for his March 24, 2005, arraignment.  Walker pled

2

guilty to the bail jumping charge. The District Court accepted Walker's plea and ordered a pre-sentence investigation report (PSI).

¶8    Walker objected to portions of his criminal history recited in the PSI, including alleged, uncharged criminal conduct contained in a section of the PSI entitled "Other Pertinent Information." The PSI noted that Walker allegedly had been the subject of two or more pending criminal investigations. The first investigation concerned the "stolen or fraudulent" credit cards that Walker had used to pay Barry Bail Bonds. The second investigation surrounded allegations by Walker's estranged wife that Walker had sexually abused her two daughters. Walker argued that the court could not consider the information concerning the pending investigations for the purposes of sentencing because such conduct had not been charged and remained unsubstantiated.

¶9    The court allowed the information in the PSI concerning Walker's uncharged conduct and considered only the weight of the information. The court sentenced Walker to an eight-year commitment to the Montana Department of Corrections, with three of the eight years suspended. The court also ordered Walker to pay restitution in the amount of $11,150 to Barry Bail Bonds. Walker appeals.

## STANDARD OF REVIEW

¶10    We review a criminal sentencing for legality only, determining whether the sentence falls within the statutory parameters. *State v. Kuykendall*, 2006 MT 110, ¶ 8, 332 Mont. 180, ¶ 8, 136 P.3d 983, ¶ 8.

## DISCUSSION

¶11     *Whether the District Court properly ordered Walker to pay restitution to a bail bondsman as part of his sentence for bail jumping.*

¶12     Walker challenges for the first time on appeal the court's order requiring him to pay restitution to Barry Bail Bonds. Walker argues that the restitution does not correlate with the underlying crime, and, therefore, is invalid under *State v. Ommundson*, 1999 MT 16, 293 Mont. 133, 974 P.2d 620. Walker also contends that the restitution order is invalid because Barry Bail Bonds does not qualify as a victim under § 46-18-241, MCA. Walker cites to *State v. Lenihan*, 184 Mont. 338, 602 P.2d 997 (1979), for the proposition that he may raise these issues for the first time on appeal.

¶13     We generally refuse to review on appeal an issue to which a party failed to object at the trial court. *State v. Kotwicki¸* 2007 MT 17, ¶ 8, 335 Mont. 344, ¶ 8, 151 P.3d 892, ¶ 8. Our decision in *Lenihan* carved out an exception to the general rule by allowing appellate review of an allegedly illegal sentence even when the defendant raised no objection to the sentence at trial. We recognized that a defendant "often times must remain silent even in the face of invalid conditions" or risk the chance that a judge may impose a stiffer sentence upon raising an objection. *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000. We deemed it the "better rule to allow an appellate court to review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, even if no objection is made at the time of sentencing." *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000.

¶14     The *Lenihan* rule does not apply, however, in cases where a defendant did not remain silent at sentencing, but, instead, actively acquiesced or participated in the imposition of a condition of sentence. *State v. Micklon*, 2003 MT 45, 314 Mont. 291, 65 P.3d 559. We held

4

in *Micklon* that a defendant who had requested installment payments for restitution could not later rely on the *Lenihan* rule to challenge the court's imposition of interest on such installment payments. We concluded that the *Lenihan* rule did not apply in light of the fact that Micklon had "affirmatively agreed to the inclusion of the interest condition in his sentence" by telling the court that he would accept the interest payments. *Micklon*, ¶ 10.

¶15 We narrowed the definition of "active acquiescence" for the purposes of invoking the *Lenihan* rule in *State v. Eaton*, 2004 MT 283, 323 Mont. 287, 99 P.3d 661. We determined that Eaton's expression of remorse and willingness to make restitution payments did not rise to the level of active acquiescence or participation in his sentencing condition for the purposes of forestalling appellate review under *Lenihan*. We allowed appellate review of Eaton's sentence under the *Lenihan* rule based on the fact that Eaton's statements of remorse lacked any request to the trial court for specific sentencing conditions. *Eaton*, ¶¶ 13-14.

¶16 We decline to apply the *Lenihan* rule here based on our decisions in *Micklon* and *Eaton*. Walker did not merely remain silent at sentencing. His statements to the court also do not reflect general expressions of remorse. Walker instead pronounced his willingness to pay restitution. Walker then used his assertion to bargain for a lighter sentence. Walker first expressed his desire to pay restitution to Parole and Probation Officer Brian Callarman (Callarman), who authored Walker's PSI report. Callarman testified at Walker's sentencing that Walker told him that he wanted to pay restitution to Barry Bail Bonds. Walker's lawyer then asked Callarman on cross examination whether "Mr. Walker would be an appropriate candidate to be placed in a pre-release so he could begin to pay any restitution if the court

5

ordered." Callarman responded that a pre-release setting would be appropriate for Walker under the circumstances.

¶17    Walker then testified at sentencing that he wanted to pay restitution. Walker testified that he "would like to pay [Barry Bail Bonds] back as quickly as possible." Walker's lawyer then argued for Walker's placement "in a prerelease center" or for a suspended sentence "so that he can be out [of custody] and make the money to pay [Barry Bail Bonds] back." Walker's lawyer further explained to the court that a "short-term sentence" would benefit both Walker and the victim, Barry Bail Bonds.

¶18    Walker's admission to the court that he intended to pay restitution to Barry Bail Bonds would not, by itself, constitute active acquiescence or participation in a sentencing condition. *Eaton*, ¶ 13. The statement, when taken in context with the entire sentencing transcript, however, shows that Walker requested a lighter, less-restrictive sentence based on his stated desire to pay restitution. Walker's request constitutes active acquiescence and participation in the court's imposition of restitution as a sentencing condition. *Micklon*, ¶ 10; *Eaton*, ¶ 13. As a result, we conclude that Walker waived his right to raise the restitution issue for the first time on appeal. *Micklon*, ¶¶ 10-11.

¶19    *Whether the District Court properly considered uncharged conduct at Walker's sentencing.*

¶20    Walker argues that the court improperly denied his request to exclude portions of the PSI report that alleged uncharged criminal conduct against Walker. Walker objected to the portion of the PSI report reciting statements made by Walker's estranged wife and David Wayne Barry of Barry Bail Bonds. The court allowed the statements to remain in the PSI.

6

The court considered the weight of the statements at Walker's sentencing and assured Walker that his sentence would not be based on those factors. Walker contends on appeal that the statements constitute hearsay upon hearsay and should have been excluded from the PSI report. Walker acknowledges that the rules of evidence do not apply to sentencing hearings. Walker nevertheless argues that due process prohibits the court from "relying on materially false information when sentencing a defendant." *Bishop v. State*, 254 Mont. 100, 110, 835 P.2d 732, 738 (1992).

¶21    The rules of evidence do not apply to sentencing hearings. *State v. Ferguson*, 2005 MT 343, ¶ 109, 330 Mont. 103, ¶ 109, 126 P.3d 463, ¶ 109. A sentencing court may "consider any relevant information relating to the nature and circumstances of the crime, the character of the defendant, the defendant's background and history, the defendant's mental and physical condition, and any other information that the sentencing court" deems to have probative force. *State v. Harper*, 2006 MT 259, ¶ 22, 334 Mont. 138, ¶ 22, 144 P.3d 826, ¶ 22. We have held that the sentencing court may consider "other acts, even those resulting in acquittal or which are dismissed pursuant to a plea bargain agreement." *State v. Mason*, 2003 MT 371, ¶ 23, 319 Mont. 117, ¶ 23, 82 P.3d 903, ¶ 23.

¶22    The due process clauses of Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution protect a defendant from being sentenced based on misinformation. Due process requires that the defendant be given an opportunity to explain, argue, and rebut any information that may lead to the deprivation of life, liberty, or property, including any information contained in a PSI. *Mason*, ¶ 21. A defendant seeking to overturn a sentence by contesting information in a PSI maintains an

7

affirmative duty to present information establishing inaccuracies. A party's mere claims of inaccuracies or misinformation within the PSI are insufficient to overturn a sentence. *Harper*, ¶ 18.

¶23 Walker fails to support his due process claim with any "exhibits or testimony which would explain or rebut" the information in the PSI. *Harper*, ¶ 21. Walker called no witnesses at his sentencing to explain or rebut the contested information in the PSI. Walker bypassed the opportunity to cross examine Barry and Callarman, the State's only witnesses, about any alleged misinformation contained in the PSI. Moreover, Walker never challenged the accuracy of the PSI during his own testimony before the sentencing court. Walker had ample opportunity to explain, argue, or rebut the information in the PSI. Walker points to no evidence or information, and we can find none in the record, that would establish inaccuracies in the PSI. Walker is not entitled to resentencing on due process grounds where there is no information to correct or rebut. *Mason*, ¶ 22. We conclude that the court properly allowed the uncharged conduct to remain in Walker's PSI report.

¶24 Affirmed.

/S/ BRIAN MORRIS

We concur:

/S/ KARLA M. GRAY
/S/ JIM RICE

Justice Patricia O. Cotter concurs.

8

¶25     As to Issue 1, I agree with Justice Nelson's assertions in his Dissent to the effect that this Court should not allow a facially illegal sentence to stand, even if it was imposed at the acquiescence or invitation of the defendant. Nonetheless, I concur in the Court's decision to affirm the order of restitution because, in my judgment, it was a facially *legal* sentence.

¶26     Section 46-18-243(2)(a), MCA, defines a "victim," for restitution purposes, as "a person who suffers loss of property . . . as a result of the commission of an offense . . . ." Such a victim is entitled to recover from the offender those damages he could "recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities." Section 46-18-243(1)(a), MCA. The restitution sentence was imposed on the bail-jumping charge. There can be no question that Barry Bail Bonds, by virtue of posting the $100,000.00 bond on behalf of Walker, suffered a loss of property when Walker fled the jurisdiction without paying the cost of the bond. Nor can it be disputed that Bonds would have been entitled to recover his losses from Walker in a civil action. Therefore, I would conclude that the sentence was a legal one under the restitution statutes, and would affirm on that basis.

¶27     As to Issue 2, I join Justice Leaphart's Concurring Opinion.

/S/ PATRICIA COTTER

Justice W. William Leaphart concurring.

¶28     I concur with the resolution of issue one.

9

¶29 In *State v. Mason*, 2003 MT 371, 319 Mont. 117, 82 P.3d 903, I dissented to the proposition that the State may introduce evidence of uncharged criminal conduct occurring at other times and places or against other victims. While I continue to adhere to that position, I recognize that our precedent in *Mason* now allows the introduction of such "other conduct" so long as it does not constitute misinformation. Under *State v. Harper*, 2006 MT 259, 334 Mont. 138, 144 P.3d 826, the defendant has an affirmative duty to present information establishing inaccuracies. Here, while Walker argued that certain information in the PSI constituted uncharged criminal conduct, he failed to assert or come forward with any evidence that the information in the PSI was inaccurate. Accordingly, being bound by our precedent, I specially concur with the result in issue two.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson, concurring in part and dissenting in part.

¶30 I concur in the Court's decision with respect to Issue 2. Specifically, I agree that Walker failed to meet his burden of demonstrating that the contested information in the presentence investigation report was materially false or inaccurate. *See* Opinion, ¶ 23.

¶31 However, I strenuously dissent from the Court's decision with respect to Issue 1. Walker claims that his sentence is illegal—i.e., one that the District Court did not have power to impose. *See State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, ¶ 41, 133 P.3d 206, ¶ 41 ("A district court's authority in sentencing a criminal defendant is defined and constrained by statute, and the court has no power to impose a sentence in the absence of specific statutory authority."). The Court chooses not to reach the merits of Walker's claim on the ground that

10

Walker "bargain[ed] for," "desire[d]," "wanted," "requested," and was "willing[]" to serve the allegedly unlawful sentence he received. Opinion, ¶¶ 16, 17, 18. This reasoning is wholly untenable. I cannot accept that a sentence, which may not be statutorily authorized and, thus, may not be one that the sentencing court had power to impose, is nevertheless beyond appellate review because the defendant "bargain[ed] for," "desire[d]," "wanted," "requested," or was "willing[]" to serve it.

¶32 What if Walker (who apparently was interested in moving to Canada) had persuaded the prosecutor and the District Court that rather than impose the cost of incarceration on Montana taxpayers, banishment to Canada was the prudent and economical sentence to impose? Would we decline to address the State's challenge to the legality of that sentence on the ground that the prosecutor had "bargain[ed] for" and "acquiesce[d]" in the sentence? According to ¶¶ 16-18 of today's Opinion, we would.

¶33 Yet, we recently suggested that an illegal sentence imposed pursuant to a plea agreement could be reviewed by this Court on direct appeal—notwithstanding the fact that the prosecutor and the defendant had "bargain[ed] for" that sentence. *See Hardin v. State*, 2006 MT 272, ¶ 19, 334 Mont. 204, ¶ 19, 146 P.3d 746, ¶ 19 ("If, for example, an offense carries a mandatory minimum of five years and counsel negotiates a plea for three years, which is accepted by the court, the sentence may be subject to direct challenge as being illegal."). Surely an illegal sentence negotiated, as here, with the sentencing judge and the probation and parole officer who prepared the presentence investigation report is no less reviewable than an illegal sentence negotiated with the prosecutor and memorialized in a plea agreement. The Court provides no basis for distinguishing between these two scenarios.

11

¶34    Indeed, the Court's whole approach in this case lacks any basis in law, which is apparent when one analyzes the lone precedent relied on by the Court—*State v. Micklon*, 2003 MT 45, 314 Mont. 291, 65 P.3d 559. (The Court also cites *State v. Eaton*, 2004 MT 283, 323 Mont. 287, 99 P.3d 661; however, *Eaton* merely recognizes and then distinguishes our holding in *Micklon*. *See Eaton*, ¶ 13.) In *Micklon*, this Court held that Micklon's sentence was beyond our review because Micklon had "affirmatively agreed" to the inclusion of the allegedly illegal condition on his sentence. *Micklon*, ¶ 10. As in the case at hand, however, the Court cited no authority to support the proposition that a potentially unlawful sentence is exempt from appellate review because the defendant "affirmatively agreed" to it. As a matter of fact, the sole basis of our holding was the principle that a defendant may not raise, for the first time on appeal, alleged *trial* errors in which he or she acquiesced or actively participated. *See Micklon*, ¶ 10 (quoting *State v. Harris*, 1999 MT 115, ¶ 32, 294 Mont. 397, ¶ 32, 983 P.2d 881, ¶ 32). Significantly, neither *Harris* nor the cases cited therein applied the "acquiescence" rule to an allegedly *illegal sentence*. Thus, our decision in *Micklon* is as lacking in foundation as is the Court's decision herein; and the Court's reliance on *Micklon*, therefore, amounts to nothing more than appellate bootstrapping.

¶35    If a district court's authority in sentencing a criminal defendant truly "is defined and constrained by statute," *Hicks*, ¶ 41, if a district court truly "has no power to impose a sentence in the absence of specific statutory authority," *Hicks*, ¶ 41, and if the sentencing authority of a court truly "exists solely by virtue of a statutory grant of power and therefore cannot be exercised in any manner not specifically authorized," *State v. Lenihan*, 184 Mont. 338, 342, 602 P.2d 997, 1000 (1979) (internal quotation marks omitted), then any sentence

imposed without specific statutory authority is plainly null and void. In my view, there is no plausible reason why this Court should refuse to determine whether a sentence is null and void; I certainly cannot accept the syllogism that a defendant's success in "bargain[ing] for" what he believes is a lighter sentence can sustain what in actuality may be a null and void sentence. Such reasoning is akin to stating that subject-matter jurisdiction can be conferred by the parties—a proposition that also lacks foundation. *See In re Marriage of Miller*, 259 Mont. 424, 427, 856 P.2d 1378, 1380 (1993) ("It is . . . a settled rule that subject matter jurisdiction cannot be waived nor conferred by consent of a party where there is no basis for jurisdiction under the law."); *accord Stanley v. Lemire*, 2006 MT 304, ¶ 31, 334 Mont. 489, ¶ 31, 148 P.3d 643, ¶ 31.

¶36 In point of fact, we have already rejected the approach taken by the Court in the case at hand. In *State v. Evert*, 2004 MT 178, 322 Mont. 105, 93 P.3d 1254, Evert (through counsel), the prosecutor, and the district court all agreed to resentence Evert approximately five years after his original, final, and legal sentence was pronounced. In determining that the district court lacked authority to do so, we observed that "[a]lthough both the County and Evert agreed to the resentencing, jurisdiction [to review and modify Evert's original sentence] cannot be conferred by consent." *Evert*, ¶ 17 (citing *Vannatta v. Boulds*, 2003 MT 343, ¶ 16, 318 Mont. 472, ¶ 16, 81 P.3d 480, ¶ 16). We thus held that the judgment entered pursuant to the resentencing was invalid. *Evert*, ¶ 17. We did so notwithstanding the fact that all persons involved—Evert, his counsel, the prosecutor, and the sentencing judge—had negotiated their way around the sentencing statutes. It is entirely inconsistent, therefore, for

13

the Court today to decline to consider whether the District Court had power to impose Walker's sentence because Walker "bargain[ed] for" that sentence.

¶37 The Court's ultimate conclusion under Issue 1 is that Walker "waived his right" to challenge the allegedly illegal portion of his sentence on appeal. Opinion, ¶ 18. Such an approach with respect to our review of sentences ignores the fundamental principle that "the waiver concept was never intended as a means of allowing a criminal defendant to choose his own sentence." *Commonwealth v. McKenna*, 383 A.2d 174, 181 (Pa. 1978). It is not only legally indefensible, but also ill-advised to hold, as the Court does today, that a defendant may negotiate whatever sentence he or she pleases, irrespective of the will of the Legislature and subject only to the predilections of the prosecutor and the sentencing judge at the time of sentencing.

¶38 Indeed, having sat on hundreds of appeals involving sentencing errors, I am convinced that far too many sentences are imposed in either complete ignorance or total disregard on the parts of defense counsel, the prosecutor, and the sentencing court of the sentencing statutes enacted by the Legislature. *Evert* provides a glaring example. In deliberately going forward with a patently illegal sentencing proceeding, the prosecutor candidly stated on the record:

> [B]y statute and by numerous rulings by the Supreme Court, . . . a district court judgment, once it has been passed, is basically set in stone. However, it's always been my practice—and also been the practice of this [district court]—that if a Defendant who has previously been sentenced appears before either myself or you and shows good cause as to why his sentence should be amended, generally mitigated, we don't object to that. *We don't hold firm to the technicalities of the statute or the Supreme Court rulings.*

*Evert*, ¶ 6 (emphasis added, paragraph break and internal quotation marks omitted).

Rightly, the *Evert* Court was appalled. We stated:

14

> The laws of the State of Montana are written to ensure that justice is served and the well-being of society and individuals is safe-guarded. Contrary to the County Attorney's pronouncement to the District Court that "we don't hold firm to the technicalities of the statute or the Supreme Court rulings," adherence to the legislative enactments and the decisions of this Court is not a matter of convenience or prosecutorial preference. *No court or officer of the court has the prerogative of circumventing or modifying the procedures established by law.*

*Evert*, ¶ 19 (emphasis added).

¶39 Today's Opinion and *Micklon* fly in the face of *Evert*'s strong admonishment to sentencing courts and counsel. We should be requiring that the laws of the State of Montana be followed and that trial courts sentence within the parameters of, and pursuant to the procedures specified in, the applicable sentencing statutes. Simply stated, we should be mandating that the bench and bar adhere to the enactments of the Legislature. Instead, with this decision, the Court chooses to turn a blind eye to a potentially illegal sentence and thus empower defense counsel, prosecutors, and sentencing courts to flout the sentencing statutes. "If this Court will not hold district courts and county attorneys to the requirements so clearly spelled out by the Montana Legislature, who will?" *In re A.S.*, 2006 MT 281, ¶ 64, 334 Mont. 280, ¶ 64, 146 P.3d 778, ¶ 64 (Gray, C.J., dissenting).

¶40 For these reasons, I respectfully, but strenuously, dissent from the Court's decision under Issue 1 not to review the legality of Walker's sentence.

/S/ JAMES C. NELSON

Justice John Warner joins the dissent:

While the language is more strident than I would choose, I am of the opinion that

15

Justice Nelson's dissent is correct, and I join it.

/S/ JOHN WARNER